May it please the court, Harris Cohen, appearing for the appellant. I'd like to reserve two minutes for rebuttal. Okay. It's undisputed that the issues in this case are decided under the Carudas case, where if the lender knew that there was a material fact, and it knew that the buyers didn't know or couldn't reasonably discover it, there's a cause of action, and summary judgment should not have decided this. Here the facts of the case are pretty clear. There was a recorded easement, which is critical because it put everybody on notice that there is an easement for utilities. One of the key issues in the case, there was a permanent power pole that's in the record. The property was started construction in 2005. By 2007 it had been assessed. The mechanics liens in 2006 and 2007 had either been cleared or expired because they're only good for six months. So by 2007 everything was done according to the facial record that you could look at. So then we go to There was no certificate of occupancy. That is correct. But in 2007, the record shows, the City of Whittier did not require a certificate of occupancy for single-family residences. Now you have to add that in the context of our expert testified that DM did more than what a reasonable foreclosure purchaser does in purchasing the property. So if a reasonable foreclosure purchaser had to go to every city office to check for a certificate of occupancy before bidding, that would be a different case. It wouldn't be our case. Our case is the expert said, and when you have a battle of experts, I'll get there in a minute. The expert said, we did more than you need to do. So you don't have to go check for a certificate of occupancy. That's not the test. And one of the issues that the district court got sidetracked on is certificate of occupancy. I thought your client knew that there was no certificate of occupancy. Am I confused about that? I don't like to say you're confused, but my client did not know. Okay, if I'm confused, I'd like to hear about it. Okay. Certificate of occupancy is not a recorded public document. It's in the building and safety department if you drive to the city, but that's not the standard of a reasonable foreclosure purchaser. And it's not like the bank thought this was a normal sale with inspections and open houses and you send in your home inspector and you get a report. This is a foreclosure sale and the bank knew it and everybody knew it. So the district court also relied on waiver, which under California law, when you find out something's wrong, you're put on a duty of reasonable investigation. So when your client discovered we can't complete the house without getting this easement, purchasing an easement, help me understand what sort of duty you would have had at that point. Should you have investigated, would it have been reasonable to go to the prior owner, to go to the bank and say what's the deal here? There's no easement that we need in order to complete the house. So my client did discover that there was an easement issue within two months after buying the property. And so then comes the question of who would you think, in the foreclosure context, because keep in mind, we're not buying from the seller. So if we had bought from a seller and a seller didn't disclose, and I'm going to answer your question so I'm not avoiding, we go back to the Shea Shepherd statement of this is a huge issue. If you're going to sell the property, Ms. Huerta, you better disclose it. But so now we go to, in a foreclosure context, when you're buying from a bank who didn't own it, didn't occupy it, wasn't a joint venture partner, wasn't a partner of any kind, was just a lender, so now you know there's a problem. What my client thought and the reasonable thinking is a builder, the former owner who got foreclosed out, had a problem in building. You don't jump to, oh, necessarily someone who just loaned the money would have known this. So when you did go and talk to Ms. Huerta, she said, oh, I told the bank about it. So had you investigated with the owner originally when you discovered it, you would have found out then that the bank was aware of this defect. And so my question would be what in the record, or what should we know, would say it wasn't reasonable to do the investigation at that time under Jolly, under the California case of Jolly? I think the record is silent on the availability of the seller. Now, there's facts behind that, but I don't want to go outside the record. So on the record, it doesn't show that the former seller was available, cooperative, willing to tell you anything. Remember, this is someone who got foreclosed out. This is not necessarily someone who's just sitting in their office every day waiting to talk to people. And the answer to that goes to the other side as well. You can't just call up a bank and go, hey, you had a borrower who got foreclosed on. Do you mind sending me over your files? You can't do that. And so if you say, well, gee, why didn't you just sue the bank on a lark? Because maybe they knew. Well, Jolly talks about investigation. I mean, so you foreclosed, you take the property, you discover a serious defect. And so the question is the district court thought it would have been reasonable at that point to investigate,  And so I'm trying to understand why that's not right. The answer is that there is an answer, but I don't think it's in the record. And I think if the bank, the lender wanted to show waiver, the lender had to ask, why didn't you do this? For which there are answers, but like I said, I want to stay within the record. But if the lender didn't put forth affirmative evidence to show why wasn't she available, you know, we have something showing she was sitting outside your office all day begging to tell you her story, but you wouldn't listen. But that's not the record in this case. Is that required for a reasonable investigation that somebody has to come, affirmatively come up to the investigator? No, but there's no showing she was available. That's what the record is missing to support a waiver argument as far as, well, an investigation argument, not a waiver, because you have to know you had the right, which on this record we didn't know. Is there anything suggesting that your client did do any investigation in the record? In the record, there's nothing to show that either my client found out or that the seller was available or cooperative. Those are key factors. Okay, so there isn't anything in the record showing efforts to investigate. That's really what I'm trying to understand. Well, you can infer from the record, since my client spent hundreds of thousands of dollars trying to solve this problem, that my client would have tried to contact the former seller who had the problem, tried to contact, to find out how do I get around this. This is a huge issue. So you could infer that my client would have done everything possible to try and turn this terrible deal into a reasonable deal to try and get their money out once they found out there's this real big problem. Because during this period, I guess your client was using the property as collateral and was doing a number of things, getting the benefit of the property. Can I address that? Please. My client didn't. My client did use it as collateral, but it didn't get the benefit of it. If you put 600 and some odd thousand into a property and then you borrow against essentially your own money because you own it, you're not getting a benefit. You're just getting to borrow against your own money. And then when it spins out of control in the district court opinion and they say, well, there's a $4 million loan against a $600,000 property. You can't borrow $4 million against $600,000. This was just one piece of collateral. That should have been obvious to the district court. Apparently it wasn't. You can't get more than 100 percent against a piece of property that's not, that for our purposes doesn't have a certificate of occupancy. As I read the district court's order, the district court was concerned that your client, on the one hand, was upset that this property didn't have the right zoning or easement paperwork. But at the same time, knowing that, used the property as if everything was okay with the property. So what's your response to that? My client used the property as best it could given the bad deal it had. My client bought it, found out it was a terrible deal. Had it been sold by the seller, could have taken action against the seller because the seller knew. Didn't have any inkling, subjective, objective or otherwise, that the bank knew. It just didn't know because we know that when it found out that the bank knew within 22 days it sued. My client isn't shy about suing. My client acted immediately when it found out. So did it take actions inconsistent with a known right? No, because it didn't have a known right. I just don't understand why your client didn't simply ask the bank or whoever knew this information and didn't tell you, hey, did you guys know about this? Why did it start using it for loans and doing all these other things? Why didn't it directly go back and just say, hey, did you guys know about this? We just learned about this. Banks don't tell you what they know and don't know. Banks tell you nothing unless you're their borrower. So banks, there's no evidence that a bank just releases information. But to answer the second part of your question, why did it go ahead and use the property, what choice did it have? It sunk $630,000 into it. It stuck with a pig and a poke. It doesn't have any reason to think it can go against the bank. It can't go against the former owner because she didn't sell it to him. It stuck. Did your client disclose the problems in its loan documentation when it was getting the collateral, when it was collateralizing that property? That's not before the court. I understand, but if you could answer my question. I guess based on your answer, I guess the answer is no. I don't personally know the answer. But I can't imagine that it would have done to someone else what was done to it. It had the value that it paid for it in it, but that's it. We know it couldn't sell it for $800,000 because that sale fell through for the same issue. My client was stuck. And the question is, should it have been stuck when the bank knew it was going to stick it? If the bank gives advice to Ms. Ware to, hey, you better disclose it, it's a huge issue. But it doesn't take its own advice. And then we have in the record that it's not uncommon at foreclosure sales for the crier to say, hey, there's a problem. You better be aware of it. I don't want to steal my last, I think I stole a minute of my last two minutes, but I have to answer your question. Thank you. We'll hear from the other side. May it please the Court, Keith Adelstein on behalf of defendants and appellees. Counsel made a statement that the DM residential did not know that a certificate of occupancy had been issued. That's not what the record indicates. In fact, there is testimony from Peter Bear, the president of DM residential, that he would have looked for a certificate of occupancy. And that he failed to do so. That that's his standard any time they're buying a construction property. So I guess my question, just reading it in context, it suggested that he would have wanted one if it was required. But what the other opposing counsel is saying, and in their briefs, is that in 2007, the city didn't require a certificate of occupancy for a residence. And so it's hard to understand why somebody would say, I would have required a certificate of occupancy even if it wasn't necessary for the house. So I can't really understand that statement in that way. Is that wrong? Well, I think it's kind of. Not to say that Your Honor is wrong. But what happened was DM residential didn't know whether or not a certificate of occupancy was actually issued by this particular jurisdiction. It was their policy to go determine a certificate of occupancies were issued. And if it turned out that one wasn't required by this jurisdiction, they would have found out the underlying problem because it was in the record that the city provided. They did nothing. They didn't do that part of their investigation. So if we understood Mr. Baer's testimony as saying in every case, before we buy or purchase a residence, we check if there is a certificate of occupancy. We would have to understand a statement that way, right? Because their expert says the due diligence was above and beyond. And they also state, which I didn't hear you rebut, that the city didn't require a certificate of occupancy for this sort of building in 2007 where it appeared that all the work was done. I can't rebut that statement because it was discovered after the fact. This is something that should have been looked into by DM residential before deciding whether or not to purchase this property. So that's sort of a different expert view might be that, no, the expert is wrong. A reasonable investor would in every case look for a certificate of occupancy. Yes, Your Honor. A reasonable investor would. But wouldn't that be a genuine issue of material fact then if you have experts sort of arguing what's reasonable for due diligence? It may be, except that Peter Baer in this case admitted that he would have gone and looked for the certificate of occupancy. That's a standard part of their due diligence, and they failed to do it. So what? If you have an expert that says what he did was enough, the fact that he personally would have done more, what difference does it make? This is a sophisticated foreclosure purchasing company. They buy hundreds of properties every year. This is their standard course of conduct. Their due diligence— Did you answer my question? Your Honor, I'm sorry. Did you answer my question? Could you repeat your question? You didn't even listen to my question. You didn't even remember my question. You were just going to keep talking and saying what you were going to say. I would like to answer your question, Your Honor. Too bad. I'm not going to ask it again. You know, if you don't listen. I apologize, Your Honor. I really would like to answer your question. What difference does it make if you have an expert that says they did enough? The fact that he might have higher standards, what difference does that make? They've got an expert that says that what they did is more than enough under standard industry practice. I think the difference is that that's their retained expert that they hired for purposes of testifying in this case. Have you ever heard of going to trial? You know, that's how experts happen. You know, you put on your expert, they put on their expert. Right? And if the experts disagree, why isn't that an issue to go to trial? Because the president of the company himself who qualifies as an expert. Says I do more. So what? So what if he says he does more? I think he's in a better position to articulate the standard of care because he's in the business of buying these properties. So you're the jury now and decide that more weight ought to be given to the president's statement than the expert. No, Your Honor. That's not what I'm attempting to articulate. I think you are. Well, it's not right. How do you get around the fact that you've got conflicting statements by experts? One expert says you would look for a certificate of occupancy. And one expert that says what they did was more than enough. Because the record itself shows that there was more than sufficient information for them to discover this issue. What do you do with an expert statement that says what they did was enough for an inquiry? What do you do with it? Do you just ignore it? No, I don't discount it. Because if we consider everything they looked at in determining whether or not to purchase this property, we'll see that they would have discovered this issue. But if that's a factual question. It's actually – I don't think so. Because they admit this. It is a factual question. But they admit these facts. They admit that they looked at the deed of trust. They admit that they investigated the property. They admit that they saw that the driveway wasn't complete, that this is in a state of construction. They admit they did due diligence, which indicated that this property was still under construction, and therefore there could be issues. They admit that they had the record showing that there was a utility easement that was incomplete, that there was a temporary power pole. These are not disputed facts. This is a very good argument that you can make to the jury. That sounds to me like another kind of thing. You just face sideways a little bit and tell it to a jury, and you may succeed. But why is this the kind of thing that cuts off the right to get to a trial fact? I think because of the Carruthers decision that says that – the standard is should the buyer – could the buyer have known or have discovered. They admit that they had the facts there to discover. Well, the question is not whether they could have discovered if they had known every fact in the world. The question is whether they would have discovered if they did the kind of inquiry that was commercially reasonable. And we have some evidence in this record that says that what they did was commercially reasonable. It's not the only evidence. There's evidence going the other way. But why doesn't that at least get them to a trial fact who can choose to accept or ignore their view that what they did was enough? And I think the answer is that based on the facts that they admit to, that in and of itself is enough to show that they had discovered the issue. It was right there in front of them. Not that they should have, but they had. They knew about it. I'm sorry. They knew that there was no easement? They knew that there was a utility easement issue. It was right there on the record in front of them. They had the construction deed of trust. They had the title report. The title report showed there was an easement, right? Right. I thought that this extra utilities easement issue came up later because the size of the house required more energy than the original easement would provide. And so that only really the building department had that information and only after investigating with Southern California Edison. Is that wrong? The record is a little confusing on that issue. I think that it was known prior to the foreclosure sale. Can you also address the waiver issue? So opposing counsel says that it wouldn't really have been a reasonable investigation to ask either the bank or the prior owner under the normals or foreclosure circumstances. Yeah, and I think the problem with that position is that they discovered the problem almost immediately after the foreclosure sale. And so they have to assume that there's only two people who are going to know about this, maybe three, but the seller, meaning the borrower, the bank, and possibly the city. And they did nothing for years. Two years went by without them investigating at all. So they say as a purchaser at a foreclosure sale, we don't know who the original owner was. We don't have any access to them. And we don't expect the bank to either know about it or to answer our questions. So it wouldn't be reasonable. I take it there's nothing in the record one way or the other about what would be reasonable in those circumstances. No, there isn't. The record is devoid of that information. But they certainly knew who the lender was, and they knew that the problem had been caused, and it could only have been caused by either the lender or the borrower. And they did nothing to investigate what happened. Instead, they invested in the property. They used it as collateral for loans. They sat on their purported rights. And then after they had spent hundreds of thousands of dollars, decided to try and then come after the lender, say that you failed to disclose this. And I think that's why the district court said this is a waiver and laches. You really should have done something to investigate this. She had everything you needed in front of you to investigate it, but you chose not to. You know, to answer the prior question, you said you think they knew is what you said, but you didn't say why you think that. You're saying they knew about the absenteeism. Oh, they knew. They admit that. That's in the record. They admit that they found out about the utility easement, I think, 20 days after they purchased the property. I'm not sure I can point exactly to the record. I thought you were talking to before, before they purchased the property. Oh, I was referencing their discovery. Well, eventually they discovered. That's nothing new. You are not maintaining that they knew about the missing easement before they bought the property. Well, I don't know one way or another. I'm saying they should have known. That's the whole Karuta standard. Well, I just kind of didn't understand what you were saying. Okay. Because it sounded to me like you were saying they knew before. No. I misspoke if I led the court to that impression of what I was saying. I think you should go back and listen to what you said. What I meant to say… This is going to be on live now, and it's going to be available immediately, so you should go back and listen. But I think you said that they knew, but you don't maintain that. No, I don't, Your Honor, and I will go back and listen. What I meant to say is that they discovered after they purchased the property before closure sale. That's after is in the waiver discussion. Right. We were still talking about the duty to disclose. I was responding to the waiver. No, no, this was before you were responding to the waiver discussion. Okay. The last thing you said before Judge Ikuda took you to the waiver discussion was to say this, that they knew. And you don't maintain that now. No, I'm saying they should have known because of all the records that were available to them, everything they had looked at before they purchased that property. They should have known about the utility easement issue. Okay. Thank you. Thank you, Your Honor. Would you like to take a minute for rebuttal? Thank you, Your Honor. Mr. Baird did not testify that he should have, could have, or would have looked for the CO. What he said was at a deposition, would you have bought the property if you had known there was no CO? Deposition is taken at a time when he knows the CO wasn't issued because the utility easements were inadequate. Obviously, if he knew the utility easements were inadequate and that's why there's no CO, he wouldn't have bought it if there was no CO. Is there any evidence that it was his practice to look for a CO before every purchase? No. There's evidence that on occasion he had, but in this case, since there was no reason to do so because the due diligence investigation did not disclose any reason to think that this property wasn't done and everything was fine, there was no reason to do that. When you have a utility easement, you don't go, oh, it's probably not a good one. Let's check, just like you don't go, oh, probably the rough plumbing wasn't done very well. We should open the walls. I mean, it just doesn't make sense when it's there to think it's bad. Second point I'd like to make is the bank set their price at $8.57 in the morning on the day of the auction with 15 minutes to go before the auction. In that 15 minutes, you can't drive to the city of Whittier, hope you get a parking spot, hope you get in line, hope you get the file, hope you open it, and hope some easement issue you're not looking for jumps out at you. That's what the test was in this case because under the case we cited, it's the circumstances of the case. The record shows they set their price at $8.57, not the price in the notice of sale, but a new price. And when they do that, that's the 15-minute window they give you. No one can say that with no one should say within that 15 minutes, you're supposed to drive to Whittier to figure this out. That makes no sense. And lastly, waivers and affirmative defense, they have the burden, not us. They had to put in the record the right questions, the answers that support them. It's not there. The district court didn't grab facts to say you should have known and that you knew you had a right. There are no facts behind the conclusion. There's a conclusion. Thank you. Thank you.
judges: Kozinski, Ikuta, Owens